1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney
2
   MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  ANDREW PAULSON (CABN 267095)
   Assistant United States Attorney
5
         1301 Clay Street, Suite 340S
6        Oakland, California 94612
         Telephone: (510) 637-3680
7        FAX: (510) 637-3724
         andrew.paulson@usdoj.gov
8
   Attorneys for United States of America
9
                    UNITED STATES DISTRICT COURT
10
                    NORTHERN DISTRICT OF CALIFORNIA
11
                           OAKLAND DIVISION
12

13 | UNITED STATES OF AMERICA,       ) CASE NO. 4:22-cr-00138-JSW
                                     )
14 |         Plaintiff,               ) **UNITED STATES' SENTENCING**
                                     ) **MEMORANDUM**
15 |    v.                           )
                                     ) Date: August 6, 2024
16 | JOSE ALFARO GAMERO,             ) Time: 1:00 p.m.
                                     ) Court: Honorable Jeffrey S. White
17 |         Defendant.              )
                                     )
18

## I.   INTRODUCTION

On December 15, 2021, Jose Alfaro Gamero was a fugitive with several outstanding felony warrants, including for the attempted murder of a police officer. When federal agents working on a fugitive task force attempted to arrest Gamero pursuant to those warrants, he attempted to flee, crashing his car into the agents' cars and multiple others parked on the street. When he was finally apprehended, he continued to resist, and spit in the direction of the agents while saying that he was infected with COVID-19. On May 7, 2024, Gamero pleaded guilty to two counts of destruction of government property in violation of 18 U.S.C. § 1361 and two counts of assault on a federal officer in violation of 18 U.S.C. § 111(a)(1). The parties have agreed that a fair and appropriate sentence in this case is 10 months' confinement, three years' supervised release, and $15,709.14 in restitution.

## II. OFFENSE CONDUCT AND SENTENCING GUIDELINES CALCULATION

### A. Gamero Crashes Into Several Parked Cars and Assaults Federal Agents Attempting to Arrest Him for Multiple Outstanding Felony Warrants

On December 15, 2021, Gamero was a fugitive with several outstanding felony warrants. One of those warrants stemmed from an incident from a year earlier when Gamero led California Highway Patrol Officers (CHP) who responded to a domestic violence call on a high-speed chase in Martinez, California. Presentence Investigation Report (PSR) ¶ 56. During the chase, Gamero drove his car directly at an officer on a motorcycle, causing the officer to dive off the motorcycle to avoid being hit by Gamero's car. He also caused an innocent bystander to crash their car as they swerved to avoid hitting Gamero as he fled down the wrong side of the street. Later, officers who responded to the scene of the domestic violence incident witnessed calls between Gamero and his estranged wife during which Gamero stated, "I just hit an officer," and "Babe, I think I killed a cop."

With this backdrop, federal agents working on a fugitive task force began surveilling Gamero. On December 15, 2021, they saw Gamero with his estranged wife on the 1400 block of 8th Street in Oakland. As Gamero got into the driver's seat of a Toyota Camry and his estranged wife got in the passenger seat, the agents turned on the sirens in their unmarked cars and pulled in front of and behind Gamero's car, pinning him between their vehicles and the nearby parked cars. That did not stop Gamero from trying to escape. As he attempted to flee, Gamero crashed into the cars parked in front of and behind him on the street, and both agents' vehicles before driving up onto the sidewalk where his car collided with a light pole, becoming disabled. His actions caused more than $10,000 in damage to the agents' cars and almost $5,000 in damage to another vehicle parked on the street.

Surrounded by agents and his car disabled, Gamero still did not relent. Agents ordered him to exit the vehicle, but he refused, forcing agents to remove him from the car and place him in handcuffs. Even that did not subdue Gamero. After being handcuffed, Gamero spat in the direction of the agents and said that he was infected with COVID-19.

Handcuffed and inside the back of a patrol car, Gamero kept at it. He kicked the doors and windows and told an officer who approached him that he was going to spit in his face if he did not back away. Additional officers eventually arrived on scene and transported Gamero to Santa Rita Jail.

### B. The PSR Accurately Calculates the Offense Level

The government agrees with the offense level as set forth in the PSR, which matches that agreed to by the parties in the Plea Agreement. PSR ¶¶ 21-45. The PSR calculates the offense level as follows:

| **Counts 1 & 2: Destruction of Government Property (18 U.S.C. § 1361)** <br> **Counts 3 & 4: Assault on a Federal Officer or Employee (18 U.S.C. § 111(a)(1))** | | |
|---|---|---|
| | **U.S.S.G. Section** | **Level/Points** |
| Group 1 (Counts 1 &2) – Destruction of Government Property | | |
| Base offense level | § 2B1.1(a)(2) | 6 |
| Specific Offense Characteristic: <br> - Loss between $6,500 and $15,000 | § 2B1.1(b)(1)(B) | +2 |
| **Adjusted offense level** | | **8** |
| Group 2 (Count 3) - Assault on a Federal Officer or Employee | | |
| Base offense level | § 2A2.4 | 10 |
| **Adjusted offense level** | | **10** |
| Group 3 (Count 4) – Assault on a Federal Officer or Employee | | |
| Base offense level | § 2A2.4 | 10 |
| **Adjusted offense level** | | **10** |
| Multiple Counts | | |
| Greater Offense Level | | 10 |
| Increase in Offense Level | §§ 3D1.4(a) | +3 |
| Combined Adjusted offense level | | 13 |
| Acceptance of responsibility | § 3E1.1(a) | -2 |
| **Total offense level** | | **11** |

### C. The PSR Accurately Calculates Gamero's Criminal History

The government also agrees with the PSR's calculation of Gamero's criminal history. PSR ¶¶ 48-58. Based on Gamero's 11 misdemeanor and two felony convictions, Gamero's criminal history score is nine, yielding a Criminal History Category (CHC) of IV. *Id.* ¶ 58. The applicable Guidelines range for offense level 11 and CHC IV is 18-24 months' imprisonment. *Id.* ¶ 114.

### D. Gamero's Objections to the PSR are Meritless

Gamero objects to the inclusion in the PSR of certain identifying information (ICE # and country of birth), information regarding the offenses to which he pleaded guilty, and summaries of prior convictions and arrests. Probation asserts that each of these objections are unfounded, and that the information was properly included in the PSR. The government agrees.

In determining an appropriate sentence, "the court may consider, without limitation, any

information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4; 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). Moreover, when it comes to evaluating the 18 U.S.C. § 3553(a) factors, district courts enjoy "broad discretion to consider all relevant information" at sentencing, *Concepcion v. United States*, 597 U.S. 481, 491 (2022), so long as the information has "some minimal indicia of reliability to support its probable accuracy," *United States v. Berry*, 258 F.3d 971, 976 (9th Cir. 2001). *See also Nichols v. United States*, 511 U.S. 738, 747 (1994) (sentencing courts "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come"). This includes "relevant conduct," which comprises, among other things, "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and "all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions." U.S.S.G. § 1B1.3(a)(1)(A) and (3). "The defendant typically has the burden to show that disputed hearsay is false or unreliable." *United States v. Franklin*, 18 F.4th 1105, 1114 (9th Cir. 2021).

To begin with, Gamero does not challenge the accuracy or reliability of any of the information to which he objects. That is likely because each of the facts in the paragraphs he challenges come from reliable sources: rap sheets and immigration records, police reports, photographs, body camera footage, and estimates/receipts.

With respect to his objections to identifying information, he argues that this should not be included in the PSR because he did not discuss this information during his presentence interview. While that may be the case, that is not a basis to exclude this basic identifying information. His "ICE#" and "Country of Birth" were taken directly from his rap sheet and immigration records. This information is thus reliable and properly included in the PSR.

His objections to paragraphs 10-13 of the PSR are equally meritless. Gamero claims that the information listed in paragraph 10 is not related to the charges to which he pleaded guilty. This is wrong. Paragraph 10 details Gamero's continued resistance and belligerence when law enforcement placed him

in the back of a patrol car just moments after he crashed into multiple cars and spit at officers while claiming he had COVID—the very crimes for which Gamero pleaded guilty. His resistance in the police car was merely a continuation of the charged acts. It is therefore clearly "relevant conduct" that the Court should consider. So too is the information in paragraphs 11 through 13, which detail the cost to repair the vehicles Gamero damaged during his escape attempt. These amounts represent the monetary value of the "harm that resulted from the acts" that Gamero pleaded guilty to. *See* U.S.S.G. § 1B1.3(a)(3). Indeed, the amount Gamero agreed to pay in restitution in the Plea Agreement is a sum of the amounts contained in paragraphs 11 through 13. Plea Agreement ¶ 10.

Finally, Gamero challenges the summaries of the police reports in paragraphs 50 through 56 and the information on other arrests contained in paragraphs 61 through 84. He provided no basis for his objection to the summaries of his convictions in paragraphs 50 through 56. That is likely because there is no basis to object to these summaries, which are based on the reliable police reports that formed the basis of the subsequent convictions. For paragraphs 61 through 84, Gamero argues that these are not relevant because he was not convicted. Again, the Court enjoys "broad discretion to consider all relevant information" at sentencing, *Concepcion*, 597 U.S. at 491, so long as the information has "some minimal indicia of reliability to support its probable accuracy," *Berry*, 258 F.3d at 976. The information contained in these paragraphs is reliable, and Gamero does not argue otherwise. That the paragraphs discuss arrests rather than convictions has no impact on the Court's ability to properly consider this information at sentencing.

## III.  SENTENCING RECOMMENDATION

### A.  Legal Standard

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)  the need for the sentence imposed to afford adequate deterrence to criminal conduct; and

(4)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**B.  The Parties' Joint Recommended Sentence of 10 Months is the Appropriate Disposition**

The seriousness of the offense, the history and characteristics of the defendant, and the need for specific and general deterrence all support the parties' joint recommendation of 10 months' imprisonment. To begin with, the offenses here are serious. In an effort to flee apprehension for multiple felony warrants that included a prior attempt to hit an officer with his car, Gamero crashed into the vehicles of two innocent people and the two agents who were attempting to apprehend him, causing more than $15,000 total in damage. And even after he was pulled from the car and placed in handcuffs, his defiance continued. He spit at the agents and proclaimed that he had COVID-19—a statement that came at the early stages of the Omicron surge that, according to the Centers for Disease Control and Prevention, would one month later result in more weekly hospital admissions than at any other time in the COVID-19 pandemic.[1] Even when he was handcuffed and confined in the back of a police car, he continued to resist and threaten officers.

This wasn't Gamero's first time attempting to flee law enforcement. In approximately October 2023, Gamero concluded a 44-month state prison sentence for the high-speed, dangerous chase he led police on in December 2020 and that is discussed above. For that, he pleaded guilty to one count of felony evading a police officer in disregard of the safety of others and one felony count of obstruction and resisting arrest. PSR ¶ 56. This was just the latest escalation in a series of criminal convictions that include, among other things, theft, DUI, drug possession, and another misdemeanor evading police conviction in 2017. Notably, because only four of Gamero's one-point convictions can count under U.S.S.G. § 4A1.1(c), his CHC is understated. Not to mention, Gamero has two dozen other arrests—12 as a juvenile and 12 as an adult. PSR ¶¶ 61-84. Moreover, when agents arrested Gamero on December 15,

---

[1] *See* "Trends in United States COVID-19 Hospitalizations, Deaths, Emergency Visits, and Test Positivity by Geographic Area," Centers for Disease Control and Prevention, available at https://stacks.cdc.gov/view/cdc/137422 (last visited July 30, 2024).

2021, he was with his wife in direct violation of a domestic violence restraining order that was issued in 2019. PSR ¶ 89. In addition to that protective order, four other members of his wife's family have multiple other restraining orders against Gamero that last through March 2026. *Id.*

Based on these facts alone, a Guidelines sentence would be entirely appropriate in this case. But a Guidelines sentence would not fully account for Gamero's circumstances. He has apparently struggled with mental health issues. Further, though he seems to have a fraught relationship with his wife—he has violated multiple restraining orders and several encounters with police involving domestic violence—Gamero's siblings and parents appear to be supportive, involved, and invested in helping him change. Whether he accomplishes lasting change, however, will depend on his own commitment to the endeavor. To that end, Gamero seems smart and capable—two ingredients for long-term success. But he must apply those abilities in a productive direction. A 10-month sentence followed by three years of supervised release properly balances the severity of the conduct here with the need to ensure that once he is released, he will use his abilities constructively towards building a crime-free future.

**IV.   CONCLUSION**

For the foregoing reasons, the United States recommends that the Court sentence Gamero to 10 months' imprisonment, three years' supervised release, a $250 special assessment, and $15,709.14 in restitution.

DATED: July 30, 2024                                  Respectfully submitted,

                                                                    ISMAIL J. RAMSEY
                                                                    United States Attorney


                                                                    */s/ Andrew Paulson*
                                                                    ANDREW PAULSON
                                                                    Assistant United States Attorney